FILED

2012 Aug-22  PM 01:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-11-S-4356-NE |
| | ) | |
| TOWN OF GURLEY, ALABAMA, STAN SIMPSON, and M&N MATERIALS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul"), is seeking a declaratory judgment that it has no contractual duty under two insurance policies that it issued to the Town of Gurley, Alabama (the "Town") to defend or indemnify the Town in connection with the issues raised in the state court action styled *M&N Materials, Inc. v. Town of Gurley, Alabama, et al.*, which was commenced in the Circuit Court of Madison County, Alabama as Civil Action No. CV-2005-000731, and which is currently pending before the Supreme Court of Alabama.

Defendant M&N Materials, Inc. ("M&N") has filed a motion to dismiss this action for failure to state a claim under Fed. R. Civ. P. 12(b)(6), arguing that the issues are not ripe for adjudication. Alternatively, M&N asks this court to stay all

proceedings pending resolution of the appeal before the Alabama Supreme Court. Likewise, the Town and defendant Stan Simpson ("Simpson") have filed a joint motion to stay all proceedings pending resolution of the appeal.

For the reasons discussed below, this court holds that the issue of whether St. Paul has a duty to *defend* the Town is ripe for adjudication, while the issue of whether St. Paul has a duty to *indemnify* the Town is not.  Thus, as to the duty to defend, this court will:  (1) deny the motion by M&N to dismiss the case; (2) deny the alternative motion by M&N to stay the case; and (3) deny the joint motion of the Town and Simpson to stay the case.  As to the duty to indemnify, this court will:  (1) grant M&N's motion to stay the resolution of that question; (2) deny as moot the alternative motion by M&N to dismiss the case; and (3) grant the joint motion of the Town and Simpson to stay.

## I.  FACTUAL BACKGROUND

**A.    Town Insurance Policies**

St. Paul issued the Town two "public entity composite"[1] insurance policies in 2003, both of which contained a "Public Entity General Liability Protection" component and a "Public Entity Management Liability Protection" component.[2]  The

---

[1] *See* doc. no. 1 (Complaint), at 5.

[2] *See* doc. nos. 1-6 - 1-13 (2003 Policy); doc. nos. 1-14 - 1-20 (2004 Policy).

first policy bore policy number GP09311290 and provided coverage from October 14, 2003 to the same date in 2004,[3] and the second policy bore policy number GP09312976 and provided coverage from October 14, 2004 to the same date in 2005.[4]

## B.   Underlying State Litigation

### 1.   Original Complaint

On April 14, 2005, M&N filed an inverse condemnation claim in the case styled *M&N Materials, Inc. v. Town of Gurley, Alabama, et al.*, Civil Action No. CV-2005-000731, in the Circuit Court of Madison County, Alabama.[5]  The complaint alleged that M&N purchased a parcel of real property in Madison County, Alabama for purposes of operating a limestone quarry,[6] and obtained all necessary state and federal regulatory approvals for the operation of a quarry on the property.[7]

The Town then enacted an ordinance annexing the property into its municipal limits,[8] refused to approve a business license for operating the quarry,[9] and imposed a moratorium on issuing business licenses to annexed Town property.[10]  Accordingly,

---

[3] *See* doc. no. 1-7 (2003 Policy, Part 2), at 14.

[4] *See* doc. no. 1-14 (2004 Policy, Part 1), at 35.

[5] *See* doc. no. 1-1 (State Court Complaint).

[6] *Id.* at 1.

[7] *Id.*

[8] *Id.* at 2.

[9] *Id.*

[10] *Id.*

M&N asserted an inverse condemnation claim and alleged that the actions of the Town constituted a taking without just compensation in violation of the Fifth Amendment to the United States Constitution and Alabama Code § 18-1A-1 *et seq.*[11]

### 2.   Amended Complaint

On October 30, 2005, M&N filed an amended complaint adding four defendants:  Stan Simpson ("Simpson"), the Mayor of the Town of Gurley; as well as Vulcan Materials Company, Vulcan Construction Materials, L.P., and Vulcan Lands, Inc (collectively, the "Vulcan defendants").[12]   M&N alleged that the Vulcan defendants owned an interest in the quarry property, and that they were added as defendants "pursuant to Ala. Code § 6-6-227 (1975)[,] which requires that all persons be made parties to actions brought pursuant to Ala. Code § 6-6-222 *et seq*."[13]

The amended complaint incorporated all of the allegations of the original complaint,[14] but added claims against the Town and Simpson for wrongful interference with contractual or business relations; negligence and wantonness; negligent or wanton hiring, retention, and supervision; a declaratory judgment; and an injunction.[15]  St. Paul provided a defense to the Town and Simpson in that action,

---

[11] Doc. no. 1-1 (State Court Complaint), at 4.

[12] *See* doc. no. 1-2 (Amended State Court Complaint), at 1.

[13] *See id.* at 2 (alteration supplied).

[14] *See id.* at 1.

[15] *See id.* at 2-8.

subject to full reservation of rights under the policies.[16]

### 3.     Jury Trial, Judgment, and Appeal

A jury heard the inverse condemnation claim against the Town and the wrongful interference claim against Simpson in February of 2011,[17] and found in favor of M&N on the inverse condemnation claim against the Town.   Damages were assessed against the Town in the amount of $2,750,000 plus interest.[18]   The circuit court entered a judgment in favor of M&N in accordance with the jury's verdict, and ordered the Town to pay damages in the amount of $2,750,000, interest in the amount of $966,493.15, and litigation expenses in the amount of $1,200,169.20.[19]

The Town filed an appeal to the Alabama Supreme Court,[20] and M&N cross-

---

[16] See doc. no. 1-3 (Reservation of Rights Letters from St. Paul to the Town of Gurley).

[17] *See* doc. no. 1-5 (Madison County Circuit Court Amended Judgment), at 3.

[18] *See* doc. no. 1 (Complaint) ¶ 19; doc. no. 11 (Answer) ¶ 18.   The jury also returned a verdict in favor of Simpson on the wrongful interference claim.   *See* Complaint ¶ 20; Answer ¶ 18.

[19] *See* doc. no. 1-5 (Madison County Circuit Court Amended Judgment), at 3.   The court also entered judgment in favor of Simpson with respect to the wrongful interference claim, and dismissed without prejudice all declaratory relief claims asserted by M&N.   *See id.*

[20] *See* doc. no. 12, Ex. A (Notice of Appeal).   The Town appealed the following issues:

　　　(1) Whether an inverse condemnation claim be based on a "regulatory taking" under § 235 of the Alabama Constitution of 1901, and whether plaintiff met the elements that would be required even if such a cause of action existed — *e.g.*, whether pre-sale events constituted a taking, whether damages were established, and whether other standards were met.

　　　(2) Whether plaintiff is the real party in interest in this case under Ala. R. Civ. P. 17.

　　　(3) Whether defendant is entitled to a new trial given inconsistent jury

5

appealed.[21]  St. Paul elected not to appeal the judgment,[22] and opted to continue to pay the Town's attorney's fees, but again subject to full reservation of rights under the policies.[23]  St. Paul argues in this case that "no coverage exists for the claims or damages asserted by M&N or the judgment entered against Gurley . . . ,"[24] and that it owes no obligation to defend the Town.[25]

---

charges and the improper admission of testimony.

    (4) Whether plaintiff is entitled to attorney's fees, and whether the trial court's fee award is excessive.

*Id.* at 14.

    [21] *See* doc. no. 12, Ex. B (Notice of Cross-Appeal).  M&N Materials cross-appealed on the following issues:

        1. Dismissal of plaintiff's claims of negligence and wantonness and negligent and wanton hiring, training, supervision.

        2. The trial court's limitation of the claim of wrongful interference to the denial of the Vulcan business license.

        3. The trial court's dismissal of plaintiff's claim arising out of a violation of Art. I, § 23 of the Alabama Constitution.

        4. The trial court's jury charges including re: "taking" in inverse condemn, and the affirmative defense of justification.

        5. The trial court's rulings on motions in limine, including allowing evidence of alleged impact quarry on health without expert testimony and excluding relevant evidence regarding a defendant's background.

*Id.* at 20.

    [22] *See* doc. no. 1-21 (St. Paul Correspondence Concerning Appeal).

    [23] *Id.*

    [24] *See* doc. no. 1 (Complaint) ¶ 45; *see also id.* at ¶ 54 (same).

    [25] *See id.* ¶¶ 49, 58.

## II.  DISCUSSION

The question of whether St. Paul is entitled to receive a declaratory judgment defining its duty to defend or indemnify the Town is governed by the Declaratory Judgment Act, which states that a court "may declare the rights and other legal relations of any interested party seeking this declaration."  28 U.S.C. § 2201.  "Except for one early decision to the contrary, all courts that have considered the issue expressly in the context of insurance coverage disputes have held that the propriety of disputes for declaratory relief in federal court is an issue of federal law."  Alan M. Posner, *Prematurity of Declaratory Judgment Actions: Does State or Federal Law Apply?*, 25 The Brief 15, 18 (1995).

Indeed, the Eleventh Circuit has repeatedly decided an insurer's duty to defend or indemnify its insured under the Declaratory Judgment Act as governed by the relevant federal law.  Specifically, the Eleventh Circuit held that an invocation of the Declaratory Judgment Act is "neither precluded nor controlled" by state procedural law.  *Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1332 (11th Cir. 1989).  Several years later, this Circuit reaffirmed *Holbrook* and held that "'the federal court has jurisdiction to entertain a declaratory judgment petition in the circumstances of this case whether or not authorized by the procedures of the state.'"  *Allstate Ins. Co. v. Prasad*, 991 F.2d 669, 671 (11th Cir. 1993); *see also* Posner, *supra*, at 18.

7

A.    **"Actual Controversy" Requirement**

Article III, Section 2 of the United States Constitution limits the judicial power of federal courts to "cases or controversies," a limitation that courts have interpreted to include a requirement that suits be "ripe" for adjudication. Because a suit that lacks ripeness is not justiciable, the absence of ripeness precludes the federal courts from exercising jurisdiction. 16 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 227:21 (1997).

As a result, the question of whether St. Paul is entitled to declaratory relief raises the question of whether there is an "actual controversy" within the meaning of the Declaratory Judgment Act. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272 (1941). When assessing the "actual controversy" requirement in complaints that invoke the Declaratory Judgment Act,

> the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-242. It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case. *Nashville, C. & St. L. Ry. Co. v. Wallace*, [288 U.S. 249,] 261 [(U.S. 1933)].

*Id.* at 273 (alterations supplied).

In weighing the issue of whether a declaratory judgment involving a third-party

insurer satisfies the "actual controversy" requirement, it is important to understand the difference between a claim that concerns the duty to defend and a claim that concerns the duty to indemnify: *i.e.*, the duty of an insurer to pay a judgment against its insured. 16 *Couch on Insurance 3d* § 227:21 (footnotes omitted).  In essence:

> The duty to defend is based on the *potential* that the trial of the underlying suit against the insured *may* develop facts showing that the occurrence is within the coverage; the duty to pay the judgment or reasonable settlement is based on facts *having been established* which show the occurrence to *actually have been* within the coverage.

*Id*. (emphasis supplied).

Under this rule, "[a]n insurer's duty to indemnify under a policy is not as extensive as its duty to defend." *State Farm & Cas. Co. v. Myrick*, 611 F. Supp. 2d 1287, 1291 (M.D. Ala. 2009) (citing *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (*per curiam*)) (alteration supplied).  Thus, "the duties must be analyzed separately." *Myrick*, 611 F. Supp. 2d at 1291(citing *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1066 (Ala. 2003)).

Because St. Paul is seeking a declaratory judgment that the two policies it issued to the Town do not create a duty to defend or indemnify the Town in the underlying state lawsuit,[26] the following discussion will consider each duty separately.

## B.    Duty to Defend

---

[26] *See* doc. no. 1 (Complaint).

"The duty to defend is . . . broader than the duty to pay, arises well before any duty to pay is conclusively established, and may well exist in a case in which the insurer is ultimately deemed not to be liable on the policy."  16 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 227:27 (1997) (footnotes omitted).  "Accordingly, whether an insurer has a duty to defend a suit against its insured is generally considered a controversy ripe for declaratory relief, even when the issue of the insurer's actual liability in the underlying suit may not be considered until after a resolution of that suit."  *Id.* § 227:29.

"An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured."  *Allstate Indem. Co. v. Lewis*, 985 F. Supp. 1341, 1344 (M.D. Ala. 1997) (citing *ALFA Mut. Ins. Co. v. Morrison*, 613 So. 2d 381, 382 (Ala. 1993); *Ladner & Co. v. Southern Guaranty Ins. Co.*, 347 So. 2d 100, 102 (Ala. 1977)).  This is because:

> "As long as the complaint comprehends an injury which may be within the scope of the policy, the company must defend the insured until the insurer can confine the claim to a recovery that the policy does not cover."  *United Services* [*Auto. Asso. v. Elitzky*], 517 A.2d [982,] 985 [(Pa. Super. Ct. 1986)]; *see also Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1226 (3d Cir. 1989) (applying Pennsylvania law); [*Pacific Indem. Co. v.*] *Linn*, 766 F.2d [754,] 760 [(3d Cir. 1985)]; *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (1987); [*Aetna Casualty & Sur. Co. v.*] *Roe*, 650 A.2d [94,] 99 [(Pa. Super. Ct. 1994)]; *Heffernan*

*& Co.* [*v. Hartford Ins. Co.*], 614 A.2d [295,] 297-98 [(Pa. Super. Ct. 1992)].  Any doubts on this score are to be resolved in favor of the insured.  *Antrim Mining, Inc. v. Pennsylvania Ins. Guar. Ass'n*, 648 A.2d 532, 535 (Pa. Super. 1994) (quoting *O'Brien Energy Sys., Inc. v. American Employers' Ins. Co.*, 629 A.2d 957, 960 (Pa. Super. 1993)). Thus, a court ordinarily will have no reason to immerse itself in the facts surrounding the incident in question; it need only look to the allegations made against the insured and decide whether, if proven, those allegations would establish an injury that the policy would cover.

*Nationwide Ins. v. Zavalis*, 52 F.3d 689, 694 (7th Cir. 1995) (alterations supplied).

Indeed, the federal courts in Alabama have repeatedly resolved the issue of an insurer's duty to defend based upon the pleadings prior to resolution of the underlying lawsuit.  *See Lewis*, 985 F. Supp. at 1344-49 (granting request for judgment on pleadings); *Guaranty National Insurance Co. v. Beeline Stores, Inc.*, 945 F. Supp. 1510, 1513-14 (M.D. Ala. 1996) (granting request for declaratory judgment); *Auto-Owners Insurance Co. v. Toole*, 947 F. Supp. 1557, 1561-65 (M.D. Ala. 1996) (granting request for declaratory judgment).

As in *Beeline* and *Toole*, this court can resolve the question of whether St. Paul has a duty to defend the Town as a declaratory judgment on the basis of the complaint and the policies without awaiting any further factual findings on appeal.  Here, the Alabama Supreme Court must decide *the Town's liability* on M&N's claims, but not determine *St. Paul's duty to defend* those claims.  Because the resolution of the issue of the Town's liability will not inform the issue of St. Paul's duty to defend, this court

11

will follow the approach in *Beeline* and *Toole* to deny the motions to dismiss or stay

the case as to the duty to defend.

## C.    Duty to Indemnify

Unlike the duty to defend, "the duty to indemnify is not ripe for adjudication

until the insured is in fact held liable in the underlying suit." *Nationwide Insurance*

*v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) (citing *Heffernan & Co. v. Hartford Ins.*

*Co.*, 614 A.2d 295, 298 (Pa. Super. 1992); *United Services Auto. Asso. v. Elitzky*, 517

A.2d 982, 992 (Pa. Super. 1986)).  This is based upon the following considerations:

> Although the existence of a duty to defend may be established by
> the allegations in the injured party's complaint, the insurer's liability to
> the insured is ultimately established by what is developed at trial.  So a
> determination of the duty to indemnify cannot be made at a preliminary
> stage in the proceedings, when it is still possible for the plaintiff in the
> underlying lawsuit to change the theory of liability and assert a claim that
> is covered by the policy at issue.

*Guaranty National Insurance Co. v. Beeline Stores, Inc.*, 945 F. Supp. 1510, 1514

(M.D. Ala. 1996) (citing *Ladner & Co. v. Southern Guaranty National Ins. Co.*, 347

So. 2d 100, 104 (Ala. 1977); *Home Ins. Co. v. Rice*, 585 So. 2d 859, 861 (Ala. 1991);

*Tapscott v. Allstate Ins. Co.*, 526 So. 2d 570, 573-75 (Ala. 1988)).

If the insured prevailed in the underlying lawsuit, the court would not have to

reach the issue of whether the insured was entitled to indemnification, and the "time

and effort the court and the parties would have expended in resolving the issue would

be wasted." *Auto-Owners Ins. Co. v. Toole*, 947 F. Supp. 1557, 1566 (M.D. Ala. 1996) (citing *Beeline*, 945 F. Supp. at 1514).

On these grounds, the courts in *Beeline* and *Toole* both declined to resolve the issue of indemnity pending the resolution of the underlying lawsuit on the insured's liability. *See Beeline*, 945 F. Supp. at 1514-15 (denying without prejudice the insurer's motion for declaratory judgment); *Toole*, 947 F. Supp. at 1565-66 (dismissing without prejudice the insurer's motion for declaratory judgment).

As in *Beeline* and *Toole*, this court will not resolve the question of whether St. Paul has a duty to indemnify the Town in the absence of a decision by the Alabama Supreme Court on the question of whether the Town is liable for any of the claims in M&N's state action. Accordingly, this court will grant defendants' motions to stay the case, and deny as moot M&N's motion to dismiss the case as to the duty to indemnify.

### D.    Arguments for Abstention

Defendants urge this court to abstain from deciding the issues of whether St. Paul must defend or indemnify the Town under two doctrines: abstention under the Declaratory Judgment Act, and abstention under the *Colorado River* rule. Each doctrine is addressed separately.

#### 1.    Abstention under the Declaratory Judgment Act

13

The Declaratory Judgment Act provides that "any court of the United States,

upon the filing of an appropriate pleading, *may* declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief

is or could be sought."  28 U.S.C. § 2201(a) (emphasis supplied).[27]  The jurisdiction

thus conferred on federal courts, however, is neither absolute nor even mandatory:

> Of course, this statute does not dispense with the Article III case or
> controversy requirement (*Trippe Mfg. Co. v. American Power
> Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995); *Deveraux v. City of
> Chicago*, 14 F.3d 328, 330 (7th Cir. 1994)), nor does it supply the court
> with subject matter jurisdiction (*Lawline v. American Bar Ass'n*, 956
> F.2d 1378, 1387 (7th Cir. 1992), *cert. denied*, 126 L. Ed. 2d 452, 114 S.
> Ct. 551 (1993)).  And even when these jurisdictional prerequisites are
> satisfied, as they are here, the district court is not compelled to declare
> the rights and relations of the parties.  *Brillhart v. Excess Ins. Co. of
> America*, 316 U.S. 491, 494 (1942).  By its terms (in particular, "may"),
> the Act grants the district court "wide discretion" in deciding whether or
> not to exercise this authority.

*Nationwide Ins. v. Zavalis*, 52 F.3d 689, 691-92 (7th Cir. 1995).

In explaining the discretionary nature of declaratory judgments, the United

States Supreme Court held that:

> "[T]here is . . . nothing automatic or obligatory about the assumption of
> 'jurisdiction' by a federal court" to hear a declaratory judgment action.
> [E.] Borchard, *Declaratory Judgments*, at 313 [(2d ed. 1941)].  By the
> Declaratory Judgment Act, Congress sought to place a remedial arrow
> in the district court's quiver; it created an opportunity, rather than a
> duty, to grant a new form of relief to qualifying litigants.  Consistent

---

[27] Emphasis was added to the word "may" because it is a precatory, not a mandatory, term.

> with the nonobligatory nature of the remedy, a district court is
> authorized, in the sound exercise of its discretion, to stay or to dismiss
> an action seeking a declaratory judgment before trial or after all
> arguments have drawn to a close.  In the declaratory judgment context,
> the normal principle that federal courts should adjudicate claims within
> their jurisdiction yields to considerations of practicality and wise
> judicial administration.

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (footnote omitted, alterations

supplied).

"In its discretion, a district court may decline to entertain a declaratory

judgment action on the merits when a pending proceeding in another court will fully

resolve the controversy between the parties."  *Ven-Fuel, Inc. v. Dept of the Treasury*,

673 F.2d 1194, 1195 (11th Cir. 1982) (citing *Hollis v. Itawamba County Loans*, 657

F.2d 746, 750 (5th Cir. 1981)[28]).  The question of whether a court should exercise its

discretion to abstain from issuing a declaratory judgment may arise in the context of

a pending state proceeding like the one on appeal in the underlying case.

When a related state action is pending, concerns about comity, the efficient

allocation of judicial resources, and fairness to the parties come into play.  *Zavalis*, 52

F.3d at 692 (citing *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir.

1991)).  The United States Supreme Court is adamant that "[g]ratuitous interference

---

[28] *Hollis* was decided on September 30, 1981.  *See Hollis*, 657 F.2d 746.  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart*, 316 U.S. at 495.

As a result, district courts should decline jurisdiction "in deference to orderly and comprehensive disposition of state court litigation when 'another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties.'" *Coregis Ins. Co. v. McCollum*, 955 F. Supp. 120, 122 (M.D. Fla. 1997) (citing *Brillhart*, 316 U.S. at 495). District courts should also consider "whether the controversy between the parties 'can be better settled in the proceeding in the state court' and whether the claims of 'all parties in interest can satisfactor[il]y be adjudicated' in the state court proceeding." *Id*. (citing *Brillhart*, 316 U.S. at 495) (alteration supplied).

It must be remembered, however, that the purpose of the Declaratory Judgment Act is "to settle 'actual controversies' before they ripen into violations of law or a breach of some contractual duty." *Hardware Mutual Casualty Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949). Thus, "[a]lthough the district court has an area of discretion in deciding whether to grant or deny declaratory relief, that discretion should be exercised liberally in favor of granting such relief in order to accomplish the purposes of the Declaratory Judgment Act." *Cincinnati Insurance Co. v. Holbrook*, 867 F.2d 1330, 1333 (11th Cir. 1989) (alteration supplied).

16

As a result, "the mere pendency of another suit is not enough in itself to refuse a declaration." *Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 590 (7th Cir. 1970) (citing *Sears, Roebuck & Co. v. American Mut. Liability Ins. Co.*, 372 F.2d 435 (7th Cir. 1967); *Chicago Metallic Mfg. Co. v. Edward Katzinger Co.*, 123 F.2d 518 (7th Cir. 1941); *Aetna Casualty & Surety Co. v. Hatridge*, 282 F. Supp. 604 (W.D. Ark. 1968); *National Union Fire Ins. Co. v. Lippert Bros., Inc.*, 233 F. Supp. 650 (D. Neb. 1964); *Kephart v. Wilson*, 219 F. Supp. 801 (W.D. Texas 1963); *Allstate Ins. Co. v. Dillard*, 190 F. Supp. 111 (E.D. Pa. 1960); *General Accident Fire & Life Assur. Corp. v. Morgan*, 33 F. Supp. 190 (W.D.N.Y. 1940)).  Instead, the district court should consider, among other matters,

> whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time.

*Zavalis*, 52 F.3d at 692 (citing *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (White, Associate Justice (Ret.), sitting by designation); *NUCOR Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577-78 (7th Cir. 1994); *American States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994)

(Garth, J., concurring); *American Casualty Co. of Reading, Pa. v. Continisio*, 819 F. Supp. 385, 393 (D. N.J. 1993), *aff'd*, 17 F.3d 62 (3d Cir. 1994); *Sears,* 422 F.2d at 590; *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 126-28(1968); *Brillhart*, 316 U.S. at 495).

Under the *Brillhard/Zavalis* standard, this court will decline to abstain from adjudicating St. Paul's duty to *defend* the Town. There are three reasons for that conclusion. First, the appeal before the Alabama Supreme Court and the motion for a declaratory judgment before this court do not involve identical issues, because the Alabama Supreme Court must decide *the Town's liability* on M&N's claims, while this court must determine *St. Paul's duty to defend* those claims. Further, the appeal before the Alabama Supreme Court and the motion for a declaratory judgment before this court do not involve identical parties, because St. Paul is not a plaintiff in the pending state proceeding. Finally, deciding the declaratory action will serve the useful purpose of clarifying whether St. Paul has a continuing legal obligation to defend the Town under the terms of its policies. If St. Paul seeks relief *after* the appeal, plaintiff will not be able to obtain comparable relief from its duty to defend the Town *throughout* the appeal. In the words of the Seventh Circuit:

> An insured and his insurer have a mutual interest in speedy resolution of the insurer's duty to supply him a defense against a tort claim that may fall outside the coverage of the insurance policy. *See*

18

> *Mhoon*, 31 F.3d at 984; *Stidham* [*v. Millvale Sportsmen's Club*], 618 A.2d [945,] 954 [(Pa. Super. Ct. 1992)]. When, as here, that duty can be ascertained without the need to resolve facts that are at issue in the underlying tort suit, it is appropriate and desirable for a district court that otherwise has jurisdiction to exercise its authority under the Declaratory Judgment Act and decide the question.

*Zavalis*, 52 F.3d at 697 (alterations supplied).

By contrast, the *Brillhard/Zavalis* standard *does* counsel this court to abstain from adjudicating St. Paul's duty to *indemnify* the Town. Although the appeal before the Alabama Supreme Court and the motion for a declaratory judgment before this court do not involve identical parties, because St. Paul is not a plaintiff in the pending state proceeding, that fact alone is not dispositive. First, the issues in the appeal before the Alabama Supreme Court and the issues in the motion for a declaratory judgment before this court are not distinct, because the Town's liability on M&N's claims *will determine* St. Paul's duty to indemnify those claims. Further, adjudicating the declaratory action will produce duplicative and piecemeal litigation, because both courts will have to assess the issue of liability, which raises the risk of unfairness to the parties and inconsistency in the judgments. If St. Paul seeks relief after the appeal, plaintiff will still be able to obtain a decision completely defining its duty to indemnify. As a result, it would not be appropriate or desirable for this court to rule on that question.

## 2.      Abstention under the *Colorado River* Rule

A party that seeks to dismiss a motion for declaratory judgment on abstention grounds must overcome a higher hurdle under the *Colorado River* rule than under the Declaratory Judgment Act.  *Coregis Ins. Co. v. McCollum*, 955 F. Supp. 120, 123 (M.D. Fla. 1997) (citing *General Star Indemnity Co. v. Puckit*, 818 F. Supp. 1526, 1529 (M.D. Fla. 1993)).  Given a federal court's duty to adjudicate controversies properly before it, "abstention from the exercise of federal jurisdiction is the exception, not the rule."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

Thus, the *Colorado River* rule only grants a federal court latitude to surrender its jurisdiction over a declaratory judgment in three " exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."  *Id.* (citing *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)).  These "exceptional circumstances" arise:

> (1) "[I]n cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law"; (2) in cases "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; and (3) in cases "where absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked  for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution, or collection of state

taxes."

*McCollum*, 955 F. Supp. at 123(citing *Colorado River*, 424 U.S. at 814-16) (alteration

supplied).

None of the "exceptional circumstances" recognized under the *Colorado River*

rule are present in this case.  There is no evidence that this case concerns the federal

constitution or state criminal proceedings, nuisance proceedings, or tax collection.

Further, the parties have failed to identify any novel or unsettled issues of state law

that should appropriately be resolved by the Alabama Supreme Court.  Upon finding

an absence of "exceptional circumstances" under *Colorado River*, the *McCollum* court

declined to dismiss an insurer's motion for declaratory judgment to define its duty to

defend.  *See McCollum*, 955 F. Supp. at 123.  This court will follow the logic in

*McCollum* and decline to abstain from exercising its jurisdiction over St. Paul's

motion.  To quote the holding in *McCollum*:

> If this Court denied Plaintiff a declaration of its rights and obligations
> under its policy with Defendants . . . , it would be exposing the Plaintiff
> to a 'very substantial and perhaps a binding obligation for providing a
> defense' to those Defendants without Plaintiff's knowing whether it owes
> such an obligation.  [*Cincinnati Ins. Co. v.*] *Holbrook*, 867 F.2d [1330,]
> 1333 [(11th Cir. 1989)].  The underlying state court action will not fully
> resolve this controversy.  Before Plaintiff incurs large expense in
> defending the state action, or before it admits liability under the policy,
> Plaintiff has a right to know whether it is bound under its contract to
> defend its insured and whether or not it would be liable under the
> coverage of its policy in the event the state court renders a judgment

against it. [*Hardware Mutual Casualty Co. v.*] *Schantz*, 178 F.2d [779,] 780 [(5th Cir. 1949)].

*McCollum*, 955 F. Supp. at 123-24 (alterations supplied).

## III. CONCLUSION

For the reasons discussed above, this court holds that the issue of whether St. Paul has a duty to defend the Town is ripe for adjudication, while the issue of whether St. Paul has a duty to indemnify the Town is not.  Thus, as to the duty to defend, this court will:  (1) deny the motion by M&N to dismiss the case; (2) deny the alternative motion by M&N to stay the case; and (3) deny the joint motion of the Town and Simpson to stay the case.  As to the duty to indemnify, this court will:  (1) grant M&N's motion to stay the resolution of that question; (2) deny as moot the alternative motion by M&N to dismiss the case; and (3) grant the joint motion of the Town and Simpson to stay.

DONE this 22nd day of August, 2012.

United States District Judge